1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10   KAYLA WIKTORSKI,

11              Plaintiff,                No. CIV S-05-713 PAN

12        vs.

13   JO ANNE B. BARNHART,
14   Commissioner of Social Security,

15              Defendant.              ORDER
     _____/
16

17              The case is before the undersigned pursuant to 28 U.S.C. § 636(c)(consent to

18   proceed before a magistrate judge).  Plaintiff seeks judicial review of a final decision of the

19   Commissioner of Social Security ("Commissioner") denying applications for Disability Income

20   Benefits ("DIB") and Disabled Adult Child Benefits under Title II of the Social Security Act

21   ("Act") and Supplemental Security Income ("SSI") under Title XVI of the Act.  For the reasons

22   discussed below, the court will deny plaintiff's motion for summary judgment or remand and

23   grant the Commissioner's cross-motion for summary judgment.

24   /////

25   /////

26   /////

I. Factual and Procedural Background

In a decision dated July 17, 2003, the ALJ determined plaintiff was not disabled.[1] The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review.  The ALJ found plaintiff has severe impairments of depression, anxiety disorder, personality disorder, back pain, and asthma, but that these impairments do not meet or medically equal a listed impairment; plaintiff's subjective complaints were not fully credible; the third party evidence submitted by plaintiff was not fully credible; plaintiff has the residual functional capacity to perform medium, unskilled work; plaintiff is limited to medium, unskilled work that requires only limited contact with the public; plaintiff is

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

1   able to perform her past relevant work as a janitor, assembly line worker, and assembler;

2   plaintiff's capacity for medium work has not been significantly reduced by her nonexertional

3   limitations; and plaintiff is not disabled.  Administrative Transcript ("AT") 29-30.  Plaintiff

4   contends that the ALJ erred in his weighing of the medical evidence and by not taking testimony

5   from a vocational expert.

6   II.  Standard of Review

7                The court reviews the Commissioner's decision to determine whether (1) it is

8   based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the

9   record as a whole supports it.  Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing

10  Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)).

11  Substantial evidence means more than a mere scintilla of evidence, but less than a

12  preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v.

13  Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)).  "It means such relevant evidence as a

14  reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402

15  U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S.

16  197, 229, 59 S. Ct. 206 (1938)).  The record as a whole must be considered, Howard v. Heckler,

17  782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that

18  detracts from the ALJ's conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir.

19  1985).  The court may not affirm the ALJ's decision simply by isolating a specific quantum of

20  supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If

21  substantial evidence supports the administrative findings, or if there is conflicting evidence

22  supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see

23  Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

24  improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d

25  1335, 1338 (9th Cir. 1988).

26  /////

3

1    III.  Analysis

2        a.  The ALJ Properly Weighed the Medical Evidence in this Case.

3            The ALJ weighed numerous medical opinions in this case.  In making his

4    findings, the ALJ gave some weight to the medical opinion of examining physician, Dr. Cheema,

5    placing less reliance in the opinions of other physicians, including plaintiff's treating physician,

6    Dr. Crawford.  AT 24-25.  This finding was not in error.

7            The weight given to medical opinions depends in part on whether they are

8    proffered by treating, examining, or non-examining professionals.  Lester v. Chater, 81 F.3d 821,

9    830 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional,

10   who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v.

11   Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

12           To evaluate whether an ALJ properly rejected a medical opinion, in addition to

13   considering its source, the court considers whether (1) contradictory opinions are in the record;

14   and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a

15   treating or examining medical professional only for "clear and convincing" reasons.  Lester , 81

16   F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be

17   rejected for "specific and legitimate" reasons.  Lester, 81 F.3d at 830.  While a treating

18   professional's opinion generally is accorded superior weight, if it is contradicted by a supported

19   examining professional's opinion (supported by different independent clinical findings), the ALJ

20   may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing

21   Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  In any event, the ALJ need not give

22   weight to conclusory opinions supported by minimal clinical findings.  Meanel v. Apfel, 172

23   F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion

24   rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a non-examining professional,

25   without other evidence, is insufficient to reject the opinion of a treating or examining

26   professional.  Lester, 81 F.3d at 831.

4

1        In his findings, the ALJ agreed with examining physician Dr. Cheema's

2   assessment that plaintiff remains capable of performing simple, repetitive tasks.  AT 25.  The

3   ALJ gave little weight to the contradictory opinion of plaintiff's treating physician, Dr. Crawford,

4   who stated that plaintiff is permanently disabled.  AT 24.  The ALJ's findings were properly

5   based upon specific and legitimate reasons supported by substantial evidence in the record.

6        Dr. Cheema found plaintiff capable of carrying out simple instructions and

7   performing simple, repetitive tasks.  AT 257.  It was this aspect of Dr. Cheema's opinion to

8   which the ALJ gave weight.  Conversely, the ALJ gave little weight to Dr. Cheema's opinions

9   that plaintiff was moderately affected in her ability to interact with the public, coworkers, and

10  supervisors; mildly to moderately affected in her ability to maintain concentration, persistence

11  and pace; and mildly to moderately affected in her ability to remember, understand, and carry out

12  complex instructions.  Id.

13       The ALJ's decision to credit certain aspects of Dr. Cheema's report was not in

14  error.  The ALJ is not obligated to accept as true every piece of a physician's opinion when that

15  opinion is not supported by the evidence in the record.  See Magallanes, 881 F.2d at 753 ("It is

16  not necessary to agree with everything an expert witness says in order to hold that his testimony

17  contains 'substantial evidence.'"  Russell v. Bowen, 856 F.2d 81, 83 (9th Cir 1988)).  Substantial

18  evidence supports the ALJ's conclusion that only one aspect of Dr. Cheema's opinion was

19  entitled to great weight.

20       Other medical experts provide support for only that part of Dr. Cheema's opinion

21  recognized by the ALJ.   Like Dr. Cheema, doctors from the State Agency found plaintiff to

22  moderately limited in several work-related areas.  AT 261-62.  These areas included the ability to

23  understand, remember, and carry out detailed instructions; the ability to maintain concentration;

24  the ability to work in coordination with or proximity to others; and the ability to respond

25  appropriately to changes in the work setting.  Id.  However, upon evaluation of all the evidence,

26  the State Agency's ultimate opinion was that plaintiff was capable of "simple" work that requires

"little public contact."  AT 263; see Magallanes, 881 F.2d at 752 (findings of the State Agency

provide substantial evidence upon which the ALJ may rely).

Furthermore, examining psychologist, Dr. Regazzi, conducted a thorough

evaluation of plaintiff on August 15, 2002.  Dr. Regazzi noted no specific mental limitations and

found plaintiff capable of carrying out simple and two-part instructions.  AT 328.  Dr. Regazzi

opined that weekly psychotherapy could help plaintiff overcome her "characterolgical" issues to

allow her to achieve her full potential.  AT 329.

While the ALJ made no express finding regarding Dr. Regazzi's opinion, it is clear that

he implicitly gave it great weight.  Dr. Regazzi's opinion that plaintiff can perform simple tasks

is consistent with the ALJ's.  Furthermore, the ALJ noted psychological tests upon which the

opinion was based, objective factors not found in other discredited opinions.  AT 25.

In not giving great weight to the entirety of Dr. Cheema's opinion, the ALJ found

that Dr. Cheema relied upon plaintiff's subjective complaints, as opposed to the objective

medical findings.  AT 25.  As noted by the ALJ, with the exception of an anxious mood, the

extent of Dr. Cheema's objective findings are consistently normal.  AT 25, 256-57.  The

overwhelming majority of evidence in Dr. Cheema's report comes from plaintiff's own history

and subjective complaints.  AT 255-56.   Reasoning that the quality of any medical opinion is

directly related to the quality of information upon which it is based, the ALJ determined that

certain aspects of Dr. Cheema's opinion that were not supported by other medical evidence

merited less weight.  This conclusion was entirely proper.

Credibility determinations do factor into evaluations of medical evidence.  Webb

v. Barnhart, 433 F.3d 683, 688 (9th Cir. 2005); see e.g. Batson v. Comm'r of Soc. Sec. Admin.,

359 F.3d 1190, 1195 (9th Cir. 2004).  When there are legitimate reasons to doubt a plaintiff's

complaints, the opinions upon which those complaints are based are also questionable.  See

Morgan v. Comm'r of Soc. Sec. Admin., 169, F.3d 595, 602 (9th Cir. 1999)("A physical opinion

of disability 'premised to a large extent upon the claimant's own accounts of [her] symptoms and

limitations' may be disregarded where those complaints have been 'properly discounted.'"

(quoting Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989)).  It is clear that legitimate reasons to

doubt plaintiff's credibility exist in this case.

   The ALJ properly assessed plaintiff's credibility.  The ALJ noted that the lack of

objective medical evidence cast doubt upon plaintiff's complaints.  AT 28.  In addition, the ALJ

found the plaintiff's extensive daily activities, as described by her and a third party witness, were

inconsistent with plaintiff's claimed level of disability.  AT 27.

   The ALJ determines whether a disability applicant is credible, and the court defers

to the ALJ's discretion if the ALJ used the proper process and provided proper reasons.  See, e.g.,

Saelee, 94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make an explicit

credibility finding.  Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v.

Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be

supported by "a specific, cogent reason for the disbelief").

   In evaluating whether subjective complaints are credible, the ALJ should first

consider objective medical evidence and then consider other factors.  Bunnell v. Sullivan, 947

F.2d 341, 344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment,

the ALJ then may consider the nature of the symptoms alleged, including aggravating factors,

medication, treatment and functional restrictions.  See id. at 345-47.  The ALJ also may consider:

(1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent

testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a

prescribed course of treatment, and (3) the applicant's daily activities.  Smolen, 80 F.3d 1273,

1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01;

SSR 88-13.  Work records, physician and third party testimony about nature, severity and effect

of symptoms, and inconsistencies between testimony and conduct also may be relevant.  Light v.

Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997).  A failure to seek treatment

for an allegedly debilitating medical problem may be a valid consideration by the ALJ in

determining whether the alleged associated pain is not a significant nonexertional impairment.
See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995).    The ALJ may rely, in part,
on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir.
1989), which cannot substitute for medical diagnosis.  Marcia v. Sullivan, 900 F.2d 172, 177 n.6
(9th Cir. 1990).  Without affirmative evidence of malingering, "the Commissioner's reasons for
rejecting the claimant's testimony must be clear and convincing."  Morgan, 169 F.3d 595, 599
(9th Cir. 1999).

      The ALJ found that the lack of medical evidence supports the conclusion that
plaintiff suffers from impairments less severe than those claimed.  The record shows that medical
examinations in which plaintiff complained of various mental impairments resulted in diagnoses
of purely physical problems.  AT 197-98.  The ALJ noted that despite her claims of an obsessive
compulsive disorder, plaintiff was never diagnosed or treated for such a condition.  AT 21.

      Plaintiff spent extensive time with a licensed clinical social worker.  However,
these sessions were largely non-specific in their assessments, recognizing plaintiff's depression
and anxiety, but concentrating more on interpersonal and familial issues.  AT 225, 228, 249, 251-
54.  The ALJ noted that during these sessions, plaintiff rarely complained about her own
problems, working instead to find ways to manage her relationship with her father and mother.
AT 21.  Furthermore, during these sessions, plaintiff reported that she enjoyed work, AT 228,
237, and desired to continue her pursue a trade, AT 237, giving no indication that her mental
impairments created any conflict with her ability to work.

      When present in the record, the history of plaintiff's treatment for her mental
ailments provides substantial evidence to support the ALJ's conclusions.   The ALJ noted that
plaintiff has consistently declined prescription medications and other treatments, choosing to rely
instead on non-prescription herbal remedies.  AT 21, 22, 198, 358.  On several occasions, in
response to plaintiff's complaints, the problem has not been deemed so severe to even consider
medication.  AT 380, 388.  Other attempts to address plaintiff's problems have been relatively

conservative, consisting of therapy, classes, information, and behavior modification.  AT 247, 358, 380, 388.

There is also a lack of objective evidence to support the physical impairments claimed by plaintiff.  The ALJ noted that, despite plaintiff's claims that she can only walk two blocks, stand for 10 minutes, and lift no more than 15 pounds, AT 431-32, examining physician Dr. Espino found plaintiff with no significant exertional restrictions and capable of lifting up to 40 pounds.  AT 193.  In addition, the record shows that, with the exception of plaintiff's asthma, doctors have not referred plaintiff for any specialized evaluation or care in response to her physical complaints.  Furthermore, as with her mental impairments, plaintiff has declined medication that may alleviate some of her physical symptoms.  AT 283.

The ALJ also noted the inconsistency between plaintiff's complaints of disabling pain and mental impairments, and her daily activities.  Plaintiff's ability to engage in some daily activities does not by itself compromise her subjective complaints of pain.  See Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004); Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001); Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (holding that one need not be "utterly incapacitated" in order to be disabled).  However, the ALJ found plaintiff performed many activities that were consistent with those necessary for productive work.  See Morgan, 169 F.3d at 600 (finding plaintiff's ability to fix meals, do laundry and yard work, and occasionally care for a friend's child sufficient to undermine complaints of pain).

Plaintiff and her father described her extensive activities; including caring for pets, AT 433, running errands, id., housekeeping, AT 105, going out twice a week to eat, AT 433, watching a movie, AT 100, socializing with friends, id., attending bible study, AT 101, and reading, AT 433.  The ALJ found that the extent of plaintiff's daily activities undermined her credibility.  AT 27.  This finding was not in error.

Just as the ALJ noted problems with some aspects of Dr. Cheema's conclusions, so too did he find numerous reasons to discredit the opinion of plaintiff's treating physician, Dr.

1   Crawford.  The ALJ found that Dr. Crawford's reliance upon plaintiff's subjective complaints

2   cast doubt upon his opinion.  AT 24.   Furthermore, the objective findings from Dr. Crawford's

3   examination did not support his sweeping conclusions.  Id.  These specific and legitimate reasons

4   are supported by substantial evidence in the record and will not be disturbed.

5          In his examination on April 3, 2002, Dr. Crawford found plaintiff suffered from a

6   number of ailments, including hypoglycemia, panic disorder with depression, chronic upper back

7   pain, overactive bladder, and asthma.  AT 283.  Based upon this diagnosis, as well as plaintiff's

8   inability to maintain long-term employment, Dr. Crawford stated that plaintiff was permanently

9   disabled.  Id.  However, in this assessment, Dr. Crawford expressly refused to provide any

10  specific description of plaintiff's work limitations.  Id.

11         According to the ALJ, in reaching his opinion regarding plaintiff's disability, Dr.

12  Crawford relied to a large extent upon plaintiff's subjective complaints.  The ALJ found plaintiff

13  to be not credible.  As noted above, this finding as it concerned plaintiff's credibility was proper.

14         Furthermore, the ALJ found the disparity between plaintiff's complaints and Dr.

15  Crawford's objective findings to be a significant factor in his decision to give little weight to the

16  medical opinion.  As noted by the ALJ, objective findings supporting Dr. Crawford's opinion are

17  extremely limited.  Id.  At the time he made his opinion that plaintiff was disabled, Dr. Crawford

18  made no abnormal findings, stating that plaintiff's affect was "appropriate" and her judgment and

19  insight "good."  AT 283.

20         These findings are consistent with the objective findings from Dr. Crawford's

21  previous examinations of plaintiff.  On June 17, 1998, Dr. Crawford found nothing abnormal in

22  his examination.  AT 222.  On August 18, 2001, Dr. Crawford found no significant abnormalities

23  in his examination, noting only mild tenderness related to plaintiff's scoliosis.  AT 198.  In

24  addition, the record shows that Dr. Crawford's treatment for most of plaintiff's physical ailments

25  was very conservative, relying on home exercise programs and plaintiff's continued use of herbal

26  /////

1  medicines.  In spite of plaintiff's numerous complaints, the only referral made by Dr. Crawford

2  was to an asthma specialist.  AT 284.

3          Numerous medical opinions contradict all aspects of Dr. Crawford's opinion that

4  plaintiff's physical and mental impairments prevented her from maintaining gainful employment.

5  Dr. Espino, an examining physician, found that plaintiff had no significant exertional restrictions

6  and was capable of lifting up to 40 pounds.  AT 193.  Doctors from the State Agency agreed that

7  plaintiff had no exertional limitations.  AT 316.  Every psychiatric examination found plaintiff

8  capable of some level of work.

9          The contrary medical opinions in the record by examining and non-examining

10  physicians cast doubt upon Dr. Crawford's opinion.  Furthermore, Dr. Crawford's and Dr.

11  Cheema's reliance on the subjective complaints of plaintiff in forming their conclusions

12  undermines some or all of their opinions.  In light of these specific and legitimate reasons, the

13  ALJ's weighing of the medical evidence in this case was not in error.

14          b.  The ALJ's Failure to Utilize a Vocational Expert was not in Error.

15          The ALJ found plaintiff to have severe depression, anxiety disorder, and

16  personality disorder.  AT 29.  According to the ALJ, these non-exertional limitations restricted

17  plaintiff to unskilled work in a non-public setting.  AT 28.  Based upon plaintiff's employment

18  history, the ALJ found her capable of performing her past relevant work and therefore, not

19  disabled.

20          Plaintiff contends that because of her nonexertional limitations, it was incumbent

21  upon the ALJ to obtain the testimony of a vocational expert.  Nonexertional limitations are

22  non-strength related limitations.  These include mental, sensory, postural, manipulative, and

23  environmental limitations.  Desrosiers v. Secretary of Health & Human Services, 846 F.2d 573,

24  579 (9th Cir.1988); 20 C.F.R., Pt. 404, Subpt. P,  Appendix 2, § 200.00(e).

25          However, this is not a case where the ALJ erroneously relied on the Medical-

26  Vocational Guidelines ("grids") despite significant nonexertional limitations in finding plaintiff

1   was no longer disabled.  Cf. Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Polny

2   v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988) (where plaintiff unable to perform past work and

3   has significant nonexertional limitations, then testimony of  vocational expert is required to

4   demonstrate the existence of specific jobs that plaintiff claimant is capable of performing despite

5   these restrictions).  It is not the case that every time a plaintiff has mental impairments, a

6   vocational expert must be consulted.  Only where the sequential analysis proceeds to the final

7   step,[2] i.e., where the ALJ is determining whether plaintiff can perform other work when past

8   relevant work cannot be performed, is vocational expert testimony required when significant

9   nonexertional impairments exist.  In this case, the sequential analysis stopped at the seventh

10  step.[3]  The ALJ found plaintiff could perform her past relevant work as a janitor and assembly

11  line worker.  The ALJ thus was not required to consult a vocational expert.[4]

12          In spite of this finding, the ALJ continued his evaluation of the evidence, offering

13  an assessment of plaintiff's case, "in the alternative."  AT 28.  In reaching his alternative

14  conclusion, the ALJ applied the grids, finding plaintiff to be not disabled.  AT 29. This finding

15  was not in error.

16          The grids are in table form.  The tables present various combinations of factors

17  the ALJ must consider in determining whether other work is available.  See generally Desrosiers,

18  846 F.2d at 577-78 (Pregerson, J., concurring). The factors include residual functional capacity,

19  age, education, and work experience.  For each combination, the grids direct a finding of either

20  "disabled" or "not disabled."

21          There are limits on using the grids, an administrative tool to resolve individual

22  claims that fall into standardized patterns: "[T]he ALJ may apply [the grids] in lieu of taking the

23  ─────────────

24          [2] In this case the eighth step of the sequential analysis.  See 20 C.F.R. § 404.1594(f)(8).

        [3] See 20 C.F.R. § 404.1594(f)(7).

25
26          [4] Plaintiff offers no objection to the ALJ's finding that she is able to perform her past
    relevant work.

1   testimony of a vocational expert only when the grids accurately and completely describe the

2   claimant's abilities and limitations." Jones, 760 F.2d at 998 (9th Cir. 1985); see also Heckler v.

3   Campbell, 461 U.S. 458, 462 n.5, 103 S. Ct. 1952, 1955 n.5 (1983).  The ALJ may rely on the

4   grids, however, even when a claimant has combined exertional and nonexertional limitations, if

5   nonexertional limitations are not so significant as to impact the claimant's exertional

6   capabilities.[5] Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990), overruled on other grounds,

7   Bunnell, 947 F.2d 341 (9th Cir. 1991) (en banc); Polny, 864 F.2d 661, 663-64 (9th Cir. 1988);

8   see also Odle v. Heckler, 707 F.2d 439 (9th Cir. 1983) (requiring significant limitation on

9   exertional capabilities in order to depart from the grids).

10          As discussed above, the ALJ properly weighed the medical evidence in the case,

11   reaching a conclusion regarding plaintiff's residual functional capacity that was supported by

12   substantial evidence.  Residual functional capacity is what a person "can still do despite [the

13   individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v.

14   Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current

15   "physical and mental capabilities").  Numerous medical sources, including Dr. Cheema, Dr.

16   Regazzi, and State Agency doctors, found plaintiff capable of performing simple, unskilled work

17   with limited public contact.

18          The application of the grids and the limitations contained on the categories of

19   work therein appropriately captures plaintiff's abilities as they are affected by her nonexertional

20   limitations.  Unskilled work needs little or no judgment to perform simple duties and can

---

21       [5] Exertional capabilities are the "primary strength activities" of sitting, standing, walking,

22   lifting, carrying, pushing, or pulling.  20 C.F.R. § 416.969a (b) (2003); SSR 83-10, Glossary; compare Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 6 (9th Cir.1989).

23          Non-exertional activities include mental, sensory, postural, manipulative and environmental matters that do not directly affect the primary strength activities. 20 C.F.R. §

24   416.969a (c)(2003); SSR 83-10, Glossary; Cooper, 880 F.2d at 1155 & n. 7 (citing 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)).  "If a claimant has an impairment that limits his or her ability

25   to work without directly affecting his or her strength, the claimant is said to have nonexertional (not strength-related) limitations that are not covered by the grids." Penny v. Sullivan, 2 F.3d

26   953, 958 (9th Cir. 1993) (citing 20 C.F.R., pt. 404, subpt. P, app. 2 § 200.00(d), (e)).

generally be learned on the job in 30 days or less.  20 C.F.R. § 404.1568(a).  Unskilled work does not require working with people.  20 C.F.R. Pt. 404, Subpt. P, App. 2, Rules 201.00(I), 202.00(g); SSR 85-15.  A plaintiff does not gain work skills by performing unskilled work.  20 C.F.R. § 404.1568(a).  These characteristics are entirely consistent with the limitations established by the ALJ and the evidence in the record.

The ALJ properly synthesized the medical opinions in this case.  In determining that plaintiff was capable of performing her past relevant work, the ALJ relied upon substantial evidence in the record.  The alternative conclusion that, upon application of the grids, plaintiff was not disabled, was also proper.

The ALJ's decision is fully supported by substantial evidence in the record and based on the proper legal standards.  Accordingly, IT IS HEREBY ORDERED that:

1.  Plaintiff's motion for summary judgment or remand is denied, and

2.  The Commissioner's cross-motion for summary judgment is granted.

DATED: June 13, 2006.

UNITED STATES MAGISTRATE JUDGE

ggh13
Wiktorski.ss.wpd

14